IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ERIN HARMS,<br><br>                Plaintiff,<br><br>vs.<br><br>VITALANT,<br><br>                Defendant. | CV 19-115-BLG-SPW<br><br>OPINION AND ORDER |

Plaintiff Erin Harms filed this action against her former employer, Defendant Vitalant, alleging wrongful discharge. (Doc. 3). Now pending is Vitalant's motion for summary judgment on Harms's claims. (Doc. 16). As discussed below, genuine issues of material fact exist regarding the claims. Accordingly, the Court denies Vitalant's motion.

I. **Statement of Facts**

Harms worked for Vitalant in several positions from 2011 until her termination on April 8, 2019. (Doc. 21 at ¶ 67). Vitalant, a blood service provider, operates three Montana locations; the Billings location includes a laboratory processing center. (*Id.* at ¶¶ 1 and 12). Harms, up until her termination, served as Vitalant's Manager of Laboratory Services—the highest-ranking Montana position in her chain of command—and managed as many as ten subordinates. (*Id.* at ¶¶

1

14-16). In that role, Harms had broad authority to manage those employees, including timecard review and editing as well as hiring, discipline, and termination authority. *Id.* at ¶¶ 20-21). Timecards, and any edits made, were submitted, reviewed and ultimately approved by Vitalant's payroll department. (*Id.* at ¶22).

In December 2018 through March 2019, Harms believed that several of her employees were not being honest with their timecards, either by clocking in earlier than they actually began working or by wasting company time loafing off or with personal tasks while clocked in. (*Id.* at ¶¶ 33, 34, and 59). Harms, after corresponding with Human Resources about the matter, emailed her employees reminding them to clock into work within five minutes of the start of their shift. (*Id.* at ¶ 43). Harms also raised her productivity concerns with those employees, apparently according to her reading of Vitalant's Corrective Action Policy. (*Id.* at ¶ 42).

When these interventions did not cure the perceived problems, Harms began editing and reducing those employees time based on that lack of productivity. (*Id.* at ¶ 46). Harms would bump punched times forward or back by one minute, and in Vitalant's timekeeping system, this would round them down to the next 15-minute increment, reducing their paid time by the same 15-minute amount. (*Id.* at ¶¶ 50-51). Harms made at least 12 such edits. (*Id.* at ¶ 52). Harms concedes that no supervisor told her to make these edits nor explicitly endorsed the edits; none of

the affected employees requested the edits. (*Id.* at ¶¶ 49 and 53). Harms did not notify the employees that she made the changes. (*Id.* at ¶ 54). After employees noticed and contested the changes, Vitalant investigated and subsequently terminated Harms's employment. (*Id.* at ¶¶ 56-67).

Harms maintains that her edits fell within the strictures of Vitalant's policies, including the company's Corrective Action Policy, Code of Conduct, Payroll Time Report Policy, and Fraud, Waste, and Abuse Policy, among others. (*Id.* at ¶ 67). Vitalant deemed Harms's conduct as an "improper editing of employee time records" under the Fraud, Waste, and Abuse Policy (referenced internally as No. FS0073) and therefore in violation of the Timekeeping Records Policy (No. FS0006). (*Id.* and Docs. 17-7 and 17-8).

## II.   Legal Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Id.*

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007)

### III. Analysis

Harms claims that Vitalant wrongfully terminated her employment for reasons that do not amount to good cause. Vitalant argues that it properly terminated Harms's employment pursuant to its internal policies after Harms edited junior employees' payroll timesheets. (Doc. 18 at 1). Vitalant asserts that it had a "legitimate business reason" in terminating the employment of a manager altering timesheets without approval and contrary to their reading of company policy and therefore there was good cause for the discharge. (*Id.*).

Montana's Wrongful Discharge from Employment Act (WDEA) states:
(1) A discharge is wrongful only if:

> (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
>
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
> (c) the employer violated the express provisions of its own written personnel policy.

4

Mont. Code Ann. § 39-2-904. Harms raises her claim under subsection (b).

An employee is wrongfully discharged if "the discharge was not for good cause and the employee had completed the employer's probationary period of employment." *Id.* "Good cause" is defined as "reasonable job-related grounds for dismissal" based on: (1) "failure to satisfactorily perform job duties"; (2) "disruption of the employer's operation"; or some other (3) "legitimate business reason." Mont. Code Ann. § 39-2-903(5).

A "legitimate business reason" is one that "is neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Buck v. Billings Montana Chevrolet, Inc.*, 811 P.2d 537, 540 (Mont. 1991). While an employer has the important right to exercise discretion over who it will keep in its employ, *McConkey v. Flathead Electric Co-op.*, 125 P.3d 1121, 1126 (Mont. 2005), "[o]f equal importance [], is the legitimate interests of the employee to secure employment." *Buck*, 811 P.2d at 540.

In order to defeat a motion for summary judgment on the issue of good cause, the employee may either prove that the given reason for the discharge is not "good cause" in and of itself, or that the given reason 'is a pretext and not the honest reason for the discharge. *Becker v. Rosebud Operating Services, Inc.*, 191 P.3d 435, 441 (Mont. 2008). The employee must present "evidence, and not mere

5

speculation or denial," to create an issue of fact. *Kestell v. Heritage Health Care Corp.*, 858 P.2d 3, 7 (Mont. 1993).

Here, Vitalant discharged Harms after she edited subordinate employee timecards. The parties do not agree on whether her actions were outside company policy. Vitalant alleges that the edits were made surreptitiously and in violation of company polices and procedures. Harms maintains that her actions fell squarely within the policy language and that she was merely correcting the timecards to reflect actual time worked. In support, Harms offers her deposition testimony asserting that no superior ever mentioned the edits, even though, according to her, the timecard records clearly reflected the editing history and flagged it for review. She further alleges that when she inquired about the method of editing timecards, Human Resources directed Harms to Policy HRG0097 and she relied on that language when making the edits.

Vitalant asserts that Harms knowingly acted contrary to the policy and therefore Vitalant had good cause to terminate her employment. Vitalant relies on both the plain language of its policies as well as its need for trustworthy managerial employees to support its position. To Vitalant, there is an important distinction between editing timecards to correct errors such as a missed punch out prior to lunch and edits to cure perceived intentional errors caused by misuse of company time; Vitalant terms the former "legitimate error" and claims the latter

6

properly falls under their employee discipline policies and not the timecard amendment policy.

Harms has presented evidence beyond mere denial contesting Vitalant's assertion of good cause. Good cause requires failure to perform job duties or other legitimate business reason. If Harms's activities fall within her job duties, as she asserts, and are within the policy language—the key contested fact in this matter—then Vitalant wrongfully terminated her employment under the WDEA. These fact-issues cannot be decided on summary judgment. The policy language is not explicit on the procedure for this scenario and Harms's deposition testimony supports her position that she was attempting to comply with the policy and Human Resources directives. While Vitalant asserts that Harms's belief that her edits were within company policy is implausible, that key fact is disputed. The disagreement is material because it essentially determines the outcome of the suit. A trier of fact could reasonably find that Harms was acting within the policy language and therefore Vitalant did not have good cause to terminate her employment.

## IV. Conclusion

For the foregoing reasons, this Court finds that summary judgment is inappropriate, and IT IS HEREBY ORDERED that Defendant Vitalant's Motion (Doc. 16) is DENIED.

DATED this 29th day of October 2020.

SUSAN P. WATTERS
United States District Judge